Jones, Judge,
delivered the opinion of the court:
This suit was instituted by the plaintiff to recover the rental and subsistence allowances of his rank, with dependents, from August 1, 1931.
He had been commissioned as Acting Chaplain in the United States Navy with the rank of lieutenant, junior grade, effective as of the date of November 6,1926.
The special act under which the claim ivas filed was approved by the President of the United States on June 30, 1930 (46 Stat. 1951) and reads as follows:
Be it enacted, by the Senate and Mouse of Representatives of the United States of America in Congress assembled, That the President is authorized to place Lieutenant (Junior Grade) Christopher S. Long, Chaplain Corps, United States Navy, upon the retired list of the Navy with the retired pay and allowances of that rank: Provided, That a duly constituted naval retiring board finds that the said Christopher S. Long has incurred physical disability incident to the service while on the active list of the Navy.
On October 3,1930, the President approved the proceedings and findings of the Naval Retiring Board which had found that he was permanently incapacitated for active service and that his incapacity resulted from an incident of the service.
The question in this case turns upon what is included in the term “retired pay and allowances of that rank” as used in the special act quoted above. It is contended by the plaintiff that the term “allowances” includes rental and subsistence. The defendant contends it does not include these items.
*547 On two different occasions this court lias passed upon the exact question at issue. Sweeney v. United States, 82 C. Cls. 640; Ralston v. United States, 91 C. Cls. 91, certiorari denied October 21, 1940, 311 U. S. 687. In each of these cases the language of the special act was substantially the same as in the case at bar. The questions were thoroughly considered and the court in each case reached the conclusion that the term “allowances” included rental and subsistence.
While the question is not altogether free from doubt, the court gave cogent reasons for the conclusions reached. Those two decisions construing exactly similar language are controlling in the instant case.
It is contended that the Congress in using the term “allowances” could not have meant to give to the plaintiff in this case provision that is not accorded officers of that rank generally. If that were true, why include the term “allowances” in the special act at all ? Why not simply give him the privilege of going before the naval retirement board for retirement under the regular provision for retirement of officers generally? This would have given him the same retirement privileges provided for other officers.
The question is not what the Congress should have done, Jbut what it actually did.
We have no right to pass on the wisdom of legislation. Our duty is simply to construe its practical effect, giving meaning to the language used and finding the intention of the Congress as disclosed by the language which it used in the special aet.
The very purpose of a special act is to take something out of the general class into which it would otherwise fall. The courts have no more right to invade the legislative field than the legislature has to invade the domain of judicial interpretation.
Numerous articles in the code provide for allowances for officers of both the Navy and the Army. They cover a wide field, depending upon the facts and circumstances, the nature of the assignment, and the conditions under which they are applied. However, the primary meaning of the word “allowances” has always been construed by both the Navy and the Army to be rental and subsistence. In addi *548 tion to these, under certain circumstances they may also have travel pay; they may have quarters instead of allowances for. quarters, but the generally accepted meaning of the term “allowances” when used in the various articles of the code is that of rental and subsistence. These allowances — that is, rental and subsistence — are usually accorded officers in the active service only. That is the general provision of the law, and that is the position in which plaintiff would have found himself had the special act simply provided that he have the right to appear before the retirement board for retirement under the provisions of the general law.
The general provision for the retirement of officers is set out in Section 167, Title 14, U. S. C. A. It is as follows:
All officers borne upon the retired list prior to April 12, 1902, or thereafter, shall receive 75 per centum of the duty pay, salary, and increase of the rank upon which they have been or may be retired: * * *
It will be noted that in this article of the code which makes provision for the retirement of officers generally there is no provision for allowances for such officers. In other words, officers generally do not receive allowances when they have been retired.
Again we repeat that had plaintiff been retired under this statute, making the same proof that he made in the instant case, he would have received no allowances.
The Congress, however, made special provision for him. What reason the Congress had — whether it thought he had been wronged, whether there were some special facts in the case which made the Congress believe special provision should be made for him, whether it was trying to make up for some injury that had been done him — it is not our province to inquire. We may not inquire into the reason, but only into the fact of what it did as disclosed by the language used.
If by the special act the Congress desired to make special provision for “allowances” for plaintiff, what more specific term could have been used in the light of the various provisions that have been made for officers under the term of “allowances,” and in the light of a long line of construe *549 tion which has been uniformly adopted by the Army and the Navy through regulations, and which regulations construe the term “allowances” to mean primarily rental and subsistence?
To construe the term “allowances” as used in the special act as not including rental and subsistence is to practically give it no meaning at all. It could not refer to travel pay, which is allowed only when an officer is assigned to some duty away from his regular post. It could not apply to rental and subsistence which he would be given if called back into active service since by the terms of Section 163, Title 14, U. S. C. A., all retired officers so recalled receive these allowances ; therefore, the use of the term “allowances” in a special act was not necessary in order to secure to plaintiff such rights. Thus to deny the plain meaning of the term “allowances” is by judicial construction to eliminate the word used by the Congress and to strike it from an act that could have had no other purpose than to give the plaintiff, for some reason that was peculiarly within the province of the Con-: gress, the special provision that was made in the special act. If the court takes any other position it practically nullifies the plain provision of the special act. We repeat we have no authority to do this.
It is urged that there are other privileges and perquisites which a retired officer has and which could have been included within the term “allowances.” A simple examination of what those perquisites are will be sufficient to disclose the weakness of that position. One of these items is the right to hospitalization in naval hospitals. As a matter of fact, a deduction is made from the salary of all officers as a contribution to a hospital fund (Sec. 3, Title 24, U. S. C. A.). In other words, the officer purchases this right and pays for it. It becomes a vested right. The Congress would have no authority to take this away from him after he had purchased it. It is in the nature of an insurance contract. Another item urged is that he has commissary privileges; but these privileges are extended to officers of the Army and Navy, both active and retired, and even to civilian employees of the Army and Navy (Sec. 534, Title 34, U. S. C. A.). Other items suggested include the right to lie carried on the Navy *550 Register and to wear the uniform of the highest wartime rank on ceremonial occasions. These items, of course, have no monetary value; on the contrary, they are usually a distinct expense. No legalistic phraseology can so warp the term “allowances” as to limit its application to the almost meaningless perquisites set out above.
Besides, it may be added that all the items above listed are accorded officers who are retired under the provisions of the general law. The plaintiff would have been entitled to these had he simply been given general retirement privileges. Whichever horn of the dilemma is chosen, we are driven to the conclusion that to construe the term “allowances” as not including anything more than the plaintiff would have been entitled to had he been retired under the general act is to nullify one of the main provisions of the special act that has been passed.
These facts are cited to show not only that the courts have practically determined this case by the principles enunciated in the Sweeney and Ralston cases, supra, but also to show the logical reason behind the construction there placed on the language of the Congress, which is supreme in the legislative field, and which for reasons it deems sufficient enacted into law the specific terms of the special act.
Plaintiff is entitled to recover the allowances claimed for a period beginning 6 years prior to August 31,1937, the date on which the petition herein was filed. The case, however, is a continuing one, and entry of judgment will be suspended pending the receipt from the General Accounting Office of a statement of the amount due plaintiff in accordance with this opinion.'
It is so ordered.
Green, Judge; and Whalex, Chief Justice, concur.